UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS, EASTERN DIVISION

CIVIL ACTION NO. 1:18-cv-11409

BERDINE CLARKE and O.L.,
    *Plaintiffs,*

v.

JOAN M. BENGTSON, M.D., SARAH C. LASSEY, M.D., BRIGHAM AND WOMEN'S PHYSICIAN ORGANIZATION, INC. and JOHN DOE CORPORATION,
    *Defendants.*

# COMPLAINT AND DEMAND FOR JURY TRIAL
# JURISDICTION AND VENUE

1. Jurisdiction is conferred by 28 U.S.C. 1332, as the parties are of diverse citizenship (Rhode Island Plaintiffs and Massachusetts Defendants), and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

2. Venue resides in the Eastern Division of the United States District Court, District of Massachusetts pursuant to 28 U.S.C. 1391(b)(2) as all of the events giving rise to the claim occurred in this judicial district.

3. Massachusetts General Laws c. 231, §60L requiring 180 day written notice to the healthcare provider before the action is filed in court is inapplicable to this case as the statute of limitations was set to expire on July 6, 2018. G.L. c. 231, §60L(j).

# PARTIES

4. Plaintiff Berdine Ryan Clarke (hereinafter "Plaintiff" or "Ms. Clarke") is a resident of 92 Viola Avenue, Riverside, East Providence, Rhode Island 02915. In or around 2015 during the time of the allegations set forth, Ms. Clarke was known as Berdine Clarke.

1

5. Plaintiff O.L. is the daughter of Ms. Clarke and a resident of 92 Viola Avenue, Riverside, East Providence, Rhode Island 02915.

6. Upon information and belief, Defendant Joan M. Bengtson, M.D. (hereinafter "Dr. Bengtson") was at all relevant times a physician licensed to practice in the Commonwealth of Massachusetts. At all relevant times Dr. Bengtson had a place of business or privileges at Brigham and Women's Hospital at 75 Francis Street, Boston, Massachusetts. Upon information and belief Dr. Bengtson's current residential address is 54 Malcolm Road, Jamaica Plain, Boston, Suffolk County, Massachusetts, 02130.

7. Upon information and belief, Defendant Sarah C. Lassey, M.D. (hereinafter "Dr. Lassey") was at all relevant times a resident physician licensed to practice in the Commonwealth of Massachusetts. At all relevant times Dr. Lassey had a place of business or privileges at Brigham and Women's Hospital at 75 Francis Street, Boston, Massachusetts. Upon information and belief, in or around 2015 during the time of the allegations set forth, Dr. Lassey was known as Sarah C. Connor. Upon information and belief Dr. Lassey's current residential address is 40 Dwight Street, Apartment 1, Boston, Suffolk County, Massachusetts 02118.

8. Upon information and belief, Defendant Brigham and Women's Physician Organization, Inc. (hereinafter "BWPO") was at all relevant times hereto a duly organized corporation with a principal place of business and primary location at 75 Francis Street, Boston, Massachusetts, 02115. Upon information and belief, at all relevant times hereto, BWPO was the employer of Dr. Bengtson.

9. Upon information and belief, Defendant John Doe Corporation was at all relevant times hereto a duly organized corporation doing business in the Commonwealth of Massachusetts.

## EVENTS

10. Ms. Clarke had a long history of stress urinary incontinence.

11. To alleviate her urinary incontinence, in or around 2014 Ms. Clarke had a pessary devise inserted into her vagina.

12. In or around 2014, Ms. Clarke became frustrated with the frequent displacement of her pessary and its ineffectiveness. She visited Dr. Bengtson for a "second opinion."

13. On or around April 10, 2015 Ms. Clarke established a patient-physician relationship with Dr. Bengtson at Brigham and Women's Hospital.

14. Dr. Bengtson recommended surgical options to relieve Ms. Clarke's urinary incontinence.

15. On or around July 7, 2015 Dr. Lassey, a resident under the supervision of Dr. Bengtson, performed a surgery on Ms. Clarke that involved a vaginal hysterectomy with ureterosacral ligament suspension, anterior and posterior colporrhaphy, and placement of a transvaginal tape sling ("TVT mesh").

16. After her surgery, a Foley catheter was placed in Ms. Clarke to help her void (voluntarily release urine from her bladder).

17. On or around July 10, 2018 Ms. Clarke returned to Dr. Bengtson for a follow-up visit. During this visit, Dr. Bengtson decided to remove the Foley catheter from Ms. Clarke despite support in medical literature that the most common complication after bladder surgery is inability to void after the Foley catheter is removed.

3

18. In the days following her surgery, Ms. Clarke experienced difficulty voiding such that her bladder would release urine without her control at times, and not release urine when she wanted to at other times.

19. At or around the weekend of July 12, 2015 Ms. Clarke contacted Dr. Bengtson about her difficulty voiding. Despite the severity of her complaints, Ms. Clarke was never able to speak with Dr. Bengtson.

20. On or around July 14, 2015 Ms. Clarke admitted herself to Women and Infant's Hospital in Providence, Rhode Island (hereinafter "Women and Infant's") for resolution of her complaints.

21. On or around July 15, 2015 Kyle Wolhrab, M.D. (hereinafter "Dr. Wolhrab") of Women and Infant's examined Ms. Clarke and found that her inability to void was "due to urethral tightening from sling procedure."

22. At or around August 19, 2015 Ms. Clarke complained to Dr. Bengtson that she could only void by sitting sideways on the toilet. Dr. Bengtson assured her this was "normal" and would resolve in time. Shortly after this visit, Ms. Clarke transferred her care to Dr. Wolhrab.

23. For more than two years after the surgery performed by Dr. Lassey and Dr. Bengtson, Ms. Clarke experienced continued difficulty voiding, suffered consecutive and recurrent urinary tract infections ("UTIs"), and developed kidney stones. Ms. Clarke was forced to miss considerable time from work during these two years due to her bladder complications.

24. On or around July 28, 2017 Ms. Clarke underwent a surgical procedure by Dr. Wolhrab at Women and Infant's to remove the TVT mesh installed by Dr. Lassey and Dr. Bengtson and repair her urethra.

25. On or around July 28, 2015 Dr. Wolhrab performed a cytoscopy which confirmed the damage to Ms. Clarke's urethra. In addition, Dr. Wolhrab discovered the TVT mesh was "narrow at [the] Urethral Vaginal juncture" and had eroded.

26. After the surgery by Dr. Wolhrab, Ms. Clarke ceased to suffer from UTIs and was able to void her bladder.

27. Ms. Clark continues to experience urinary incontinence and other issues related to the damage from the TVT mesh.

## CLAIMS

28. The TVT mesh placed under Ms. Clarke's bladder failed and caused Ms. Clarke's injuries either through the negligence of Dr. Lassey and Dr. Bengtson, or negligent product design or product failure.

29. As a result of the failure of the surgery by Dr. Lassey and Dr. Bengtson, or negligent product design or product failure., Ms. Clarke was forced to undergo a second surgery to remove the TVT mesh

## COUNT I – NEGLIGENCE
## BERDINE CLARKE V. JOAN M. BENGTSON, M.D.

30. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 29 above as if expressly set forth herein.

31. Defendant Dr. Bengtson owed a duty to Plaintiff Ms. Clarke to use the care and skill required of the average qualified physician, taking into account the advances in the profession at the time in 2015, and under the circumstances that then existed.

5

32. On or about July 7, 2015, Plaintiff Ms. Clarke was a patient of the Defendant Dr. Bengtson, was under the Defendant's care and treatment, and was relying upon the Defendant physician to provide her with the care and skill required of the average qualified physician properly practicing the profession.

33. Defendant Dr. Bengtson negligently, carelessly, and/or unskillfully treated Plaintiff Ms. Clarke and deviated from and fell below the accepted standard of care for the average qualified physician in the Commonwealth of Massachusetts in 2015, taking into account the advances in the profession, by and among other things:
    a. Failing to insure the TVT mesh was installed in a proper manner;
    b. Damaging Ms. Clarke's urethra,
    c. Failing to properly communicate to Ms. Clarke the documented risks of TVT mesh placement;
    d. Removing the Foley catheter from Ms. Clarke too early in her post-operative recovery; and
    e. Not taking Ms. Clarke's post-operative concerns seriously.

34. As a direct and proximate result of the negligence and carelessness of the Defendant, Dr. Bengtson, Plaintiff Ms. Clarke was caused to suffer various physical debilitations and ordeals including but not limited to:
    a. The painful, inconvenient, and humiliating inability to void her bladder;
    b. Consecutive and painful urinary tract infections;
    c. Lost wages due to missing considerable time from work;
    d. Loss of enjoyment of life;
    e. Emotional distress;

6

   f. Permanent and severe personal injuries;

   g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

   h. Substantial medical expenses.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant Dr. Bengtson for monetary damages to be determined by a jury, plus interest and costs.

## COUNT II – NEGLIGENCE
## BERDINE CLARKE V. SARAH C. LASSEY, M.D.

35. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 34 above as if expressly set forth herein.

36. Defendant Dr. Lassey owed a duty to Plaintiff Ms. Clarke to use the care and skill required of the average qualified resident physician, taking into account the advances in the profession at the time in 2015, and under the circumstances that then existed.

37. On or about July 7, 2015, Plaintiff Ms. Clarke was a patient of the Defendant Dr. Lassey, was under the Defendant's care and treatment, and was relying upon the Defendant resident physician to provide her with the care and skill required of the average qualified member of the profession.

38. Defendant Dr. Lassey negligently, carelessly, and/or unskillfully treated Plaintiff Ms. Clarke and deviated from and fell below the accepted standard of care for the average qualified resident physician in the Commonwealth of Massachusetts in 2015, taking into account the advances in the profession, by and among other things:

   1. Failing to install the TVT mesh in a proper manner; and

   2. Damaging Ms. Clarke's urethra.

7

39. As a direct and proximate result of the negligence and carelessness of the Defendant, Dr. Lassey, Plaintiff Ms. Clarke was caused to suffer various physical debilitations and ordeals including but not limited to:

    a. The painful, inconvenient, and humiliating inability to void her bladder;

    b. Consecutive and painful urinary tract infections;

    c. Lost wages due to missing considerable time from work;

    d. Loss of enjoyment of life;

    e. Emotional distress;

    f. Permanent and severe personal injuries;

    g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

    h. Substantial medical expenses.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant Dr. Lassey for monetary damages to be determined by a jury, plus interest and costs.

## COUNT III – VICARIOUS LIABILITY
## BERDINE CLARKE V. BRIGHAM AND WOMEN'S PHYSICIAN ORGANIZATION, INC.

40. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 39 above as if expressly set forth herein.

41. The Defendant Joan M. Bengtson, M.D., while practicing within the scope of her employment, agency, and/or servitude for Brigham and Women's Physician Organization, Inc., in her capacity as officer, director, managing agent, agent, servant, and/or employee of Brigham and Women's Physician Organization, Inc., fell below the

8

accepted standard of care for health providers in 2015, where her acts or omissions were negligent, reckless, and/or careless.

42. Brigham and Women's Physician Organization, Inc. is vicariously liable for its agents', servants' and/or employees' negligence and/or gross negligence.

43. As a direct and proximate result of the negligence and carelessness of the Defendant, Dr. Bengtson, Plaintiff Ms. Clarke was caused to suffer various physical debilitations and ordeals including but not limited to:

   a. The painful, inconvenient, and humiliating inability to void her bladder;

   b. Consecutive and painful urinary tract infections;

   c. Lost wages due to missing considerable time from work;

   d. Loss of enjoyment of life;

   e. Emotional distress;

   f. Permanent and severe personal injuries;

   g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

   h. Substantial medical expenses.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant BWPO for monetary damages to be determined by a jury, plus interest and costs.

## COUNT IV – LOSS OF CONSORTIUM
## O.L. V. JOAN M. BENGTSON, M.D.

44. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 43 above as if expressly set forth herein.

45. Plaintiff O.L. was at all times relevant hereto the minor daughter of Plaintiff Ms. Clarke.

9

46. As a direct and proximate result of the negligence, carelessness, and lack of skill of Defendant Dr. Bengtson and the consequent injuries to Berdine Clarke, the mother of O.L., Plaintiff O.L. has suffered the loss of consortium, society, companionship and services of Plaintiff Ms. Clarke.

WHEREFORE, Plaintiff O.L. demands judgment in her favor against Defendant Dr. Bengtson for monetary damages to be determined by a jury, plus interest and costs.

## COUNT V – LOSS OF CONSORTIUM
## O.L. V. SARAH C. LASSEY, M.D.

47. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 46 above as if expressly set forth herein.

48. Plaintiff O.L. was at all times relevant hereto the minor daughter of Plaintiff Ms. Clarke.

49. As a direct and proximate result of the negligence, carelessness, and lack of skill of Defendant Dr. Lassey and the consequent injuries to Berdine Clarke, the mother of O.L., Plaintiff O.L. has suffered the loss of consortium, society, companionship and services of Plaintiff Ms. Clarke.

WHEREFORE, Plaintiff O.L. demands judgment in her favor against Defendant Dr. Lassey for monetary damages to be determined by a jury, plus interest and costs.

## COUNT VI – LOSS OF CONSORTIUM
## O.L. V. BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC.

50. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 49 above as if expressly set forth herein.

51. Plaintiff O.L. was at all times relevant hereto the minor daughter of Plaintiff Ms. Clarke.

52. As a direct and proximate result of the negligence, carelessness, and lack of skill of Defendant BWPO, its agents, servants, and/or employees and the consequent injuries to

10

Berdine Clarke, the mother of O.L., Plaintiff O.L. has suffered the loss of consortium, society, companionship and services of Plaintiff Ms. Clarke.

WHEREFORE, Plaintiff O.L. demands judgment in her favor against Defendant BWPO for monetary damages to be determined by a jury, plus interest and costs.

## COUNT VII - NEGLIGENCE
## BERDINE CLARKE V. JOHN DOE CORPORATION

53. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 52 above as if expressly set forth herein.

54. Subsequent to Dr. Lassey and Dr. Bengtson using the TVT mesh product manufactured by John Doe Corporation, Ms. Clarke suffered from inability to urinate, chronic urinary tract infections, narrowing of the urethra, and erosion of the urethra.

55. Defendant John Doe Corporation, acting individually and/or through subsidiaries, other entities, or agents it controls, engaged in the design, manufacturing, testing, production, and/or distribution of the TVT mesh product it manufactures, which at all relevant times was and is defectively designed and/or manufactured, and contained insufficient instructions and warnings of the risks and dangers of the TVT mesh product it manufactures.

56. The defective design and/or manufacturing of the TVT mesh product manufactured by John Doe Corporation caused or contributed to Ms. Clarke's serious injuries as herein described.

57. Defendant John Doe Corporation acting individually and/or through subsidiaries, other entities, or agents it controls, encouraged and/or endorsed the use of the TVT mesh product it manufactures with respect to Ms. Clarke.

58. At all relevant times, Defendant John Doe Corporation, jointly and severally, acting in concert with others and/or their subsidiaries or other entities it controls, was the designer, manufacturer, producer, and/or vendor of the TVT mesh product it manufactures.

59. Defendant John Doe Corporation had a duty to use reasonable care in the design, manufacturing, testing, production, and/or sale of the TVT mesh product it manufactures that it was reasonably fit for its intended purposes, and did not contain defects which would endanger those on whom the product was used.

60. Defendant John Doe Corporation had a duty to warn the general public and potential consumers/users of the TVT mesh product it manufactures, including Ms. Clarke, of the dangers inherent in the use of the product.

61. Defendant John Doe Corporation breached its duty owed to Ms. Clarke by negligently designing, manufacturing, testing, producing, selling, and/or distributing the TVT mesh product it manufactures, which was unreasonably dangerous to Ms. Clarke, causing her serious and permanent injuries.

62. Defendant John Doe Corporation breached its duty owed to Ms. Clarke by selling, distributing, and/or otherwise disseminating the TVT mesh product it manufactures without necessary, proper, and sufficient warnings regarding the risks and dangers associated with the use of the product.

63. Had Ms. Clarke been properly warned of the dangers of using the TVT mesh product manufactured by John Doe Corporation, she would have requested the product not be used at all.

64. As a direct and proximate result of the negligence of Defendant John Doe Corporation and/or its subsidiaries or other entities it controls, Ms. Clarke was severely, grievously,

and permanently injured, and was otherwise incapacitated from her normal functioning including but not limited to:

   a. The painful, inconvenient, and humiliating inability to void her bladder;

   b. Consecutive and painful urinary tract infections;

   c. Lost wages due to missing considerable time from work;

   d. Loss of enjoyment of life;

   e. Emotional distress;

   f. Permanent and severe personal injuries;

   g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

   h. Substantial medical expenses.

65. Ms. Clarke was required to expend money in connection with the treatment and care of the aforesaid injuries, and was required to undergo additional medical treatment. As a direct and proximate result of her medical condition cause by the TVT mesh product manufactured by John Doe Corporation, Ms. Clarke was unable to work.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant John Doe Corporation for monetary damages to be determined by a jury, plus interest and costs.

### COUNT VIII - STRICT LIABILITY
### BERDINE CLARKE V. JOHN DOE CORPORATION

66. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 65 above as if each were set forth here in its entirety.

67. Ms. Clarke reasonably expected that the TVT mesh product manufactured by John Doe Corporation was designed, manufactured, and sold in a safe condition. Ms. Clarke reasonably expected that said product would not erode her urethra, cause narrowing or

13

her urethra, and cause her to develop several UTIs, difficulty voiding, and the need for another surgery to remove the product.

68. At no time prior to having the TVT mesh product manufactured by John Doe Corporation used on her was Ms. Clarke informed or otherwise made aware of the risks and dangers of the product. Defendant John Doe Corporation individually and/or through subsidiaries, other entities, or agents it controls, engaging in the design, manufacturing, testing, production, and/or distribution of the product, failed to provide necessary and sufficient instructions and warnings to Ms. Clarke.

69. At all relevant times, the TVT mesh product manufactured by John Doe Corporation was defective because it contained a manufacturing defect, was defectively designed, inadequately tested, and/or did not include sufficient instructions or warnings of potential risks and dangers of its use.

70. At the time of the design, manufacturing, and sale of the TVT mesh product it manufactures, Defendant John Doe Corporation knew or reasonably should have known of the product's defective condition and/or insufficient instructions or warnings of potential risks and dangers of its use.

71. At the time of use, the TVT mesh product it manufactures was in substantially the same condition as when it left Defendant John Doe Corporation's possession. Any changes made to the product, if any, after it left said Defendant's possession were reasonably foreseeable, and the manner in which the product was advertised, marketed, and sold was also reasonably foreseeable.

72. As a direct and proximate result of the defects in the design, manufacturing, distribution, sale, and/or insufficient instructions and warnings of the TVT mesh product

14

manufactured by John Doe Corporation, Ms. Clarke was severely, grievously, and permanently injured, and was otherwise incapacitated from her normal functioning including but not limited to:

    a. The painful, inconvenient, and humiliating inability to void her bladder;

    b. Consecutive and painful urinary tract infections;

    c. Lost wages due to missing considerable time from work;

    d. Loss of enjoyment of life;

    e. Emotional distress;

    f. Permanent and severe personal injuries;

    g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

    h. Substantial medical expenses.

73. Ms. Clarke was required to expend money in connection with the treatment and care of the aforesaid injuries/diseases, and was required to undergo additional medical treatment. As a direct and proximate result of the TVT mesh product manufactured by John Doe Corporation, Ms. Clarke was unable to work.

74. The acts and/or omissions of Defendant John Doe Corporation committed jointly and severally, in concert with its subsidiaries, other entities, or agents it controls, were acts and omissions that amount to willful, wanton, and/or reckless conduct.

75. As a direct and proximate result of the defective and unreasonably dangerous design and/or insufficient instructions and warnings for the TVT mesh product manufactured by John Doe Corporation, Ms. Clarke sustained severe, grievous, and permanent injuries/diseases.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant John Doe Corporation for monetary damages to be determined by a jury, plus interest and costs.

### COUNT IX - BREACH OF EXPRESS WARRANTY
### BERDINE CLARKE V. JOHN DOE CORPORATION

76. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 75 above as if each were set forth here in its entirety.

77. Defendant John Doe Corporation jointly and severally, in concert with its subsidiaries, other entities, and/or agents it controls, expressly represented to consumers/users of the TVT mesh product it manufactures, including Ms. Clarke, that the product was safe and fit for its intended purposes, merchantable, adequately tested and fit for its intended use, and contained sufficient instructions and warnings of potential risks and dangers.

78. Defendant John Doe Corporation individually and/or its subsidiaries expressly knew or reasonably should have known that said representations, warranties, instructions and warnings were false, misleading, and untrue in that the TVT mesh product it manufactures was not, and is not safe and fit for its intended use, and was likely to produce serious injuries/diseases to consumers/users of the product, including Ms. Clarke.

79. Thus, Defendant John Doe Corporation breached its express warranties with respect to the TVT mesh product it manufactures.

80. As a direct and proximate result of this aforementioned breach of warranty by Defendant John Doe Corporation and/or its subsidiaries, Ms. Clarke sustained severe, grievous, and permanent injuries/diseases including but not limited to:
    a. The painful, inconvenient, and humiliating inability to void her bladder;
    b. Consecutive and painful urinary tract infections;

    c. Lost wages due to missing considerable time from work;

    d. Loss of enjoyment of life;

    e. Emotional distress;

    f. Permanent and severe personal injuries;

    g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

    h. Substantial medical expenses.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant John Doe Corporation for monetary damages to be determined by a jury, plus interest and costs.

## COUNT X - BREACH OF IMPLIED WARRANTY
## BERDINE CLARKE V. JOHN DOE CORPORATION

81. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 80 above as if each were set forth here in its entirety.

82. Defendant John Doe Corporation individually and/or its subsidiaries, other entities, or agents it controls, impliedly warranted that the TVT mesh product it manufactures was safe and fit for its intended purposes, merchantable, adequately tested and fit for its intended use, and contained sufficient instructions and warnings of potential risks and dangers.

83. Defendant John Doe Corporation individually and/or its subsidiaries knew or reasonably should have known that said implied representations, warranties, instructions and warnings were false, misleading, and untrue in that the TVT mesh product it manufactures was not, and is not safe and fit for its intended use, and was likely to produce serious injuries/diseases to consumers/users of the product, including Ms. Clarke.

17

84. Thus, Defendant John Doe Corporation breached its implied warranties with respect to the TVT mesh product it manufactures.

85. As a direct and proximate result of this aforementioned breach of warranty by Defendant John Doe Corporation and/or its subsidiaries, Ms. Clarke sustained severe, grievous, and permanent injuries/diseases including but not limited to:

    a. The painful, inconvenient, and humiliating inability to void her bladder;

    b. Consecutive and painful urinary tract infections;

    c. Lost wages due to missing considerable time from work;

    d. Loss of enjoyment of life;

    e. Emotional distress;

    f. Permanent and severe personal injuries;

    g. Subsequent surgery to remove the TVT, including the pain and financial costs associated; and

    h. Substantial medical expenses.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant John Doe Corporation for monetary damages to be determined by a jury, plus interest and costs.

WHEREFORE, Plaintiff Ms. Clarke demands judgment in her favor against Defendant John Doe Corporation for monetary damages to be determined by a jury, plus interest and costs.

### COUNT XI – LOSS OF CONSORTIUM
### O.L. V. JOHN DOE CORPORATION

86. Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 85 above as if expressly set forth herein.

87. Plaintiff O.L. was at all times relevant hereto the minor daughter of Plaintiff Ms. Clarke.

88. As a direct and proximate result of the negligence, carelessness, and breach of express and implied warranties of Defendant John Doe Corporation and the consequent injuries to Berdine Clarke, the mother of O.L., Plaintiff O.L. has suffered the loss of consortium, society, companionship and services of Plaintiff Ms. Clarke.

WHEREFORE, Plaintiff O.L. demands judgment in her favor against Defendant John Doe Corporation for monetary damages to be determined by a jury, plus interest and costs.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

> Respectfully submitted,
> PLAINTIFFS,
> By their Attorneys,

Date: July 5, 2018

*/s/ Ingrid Halstrom*

Frederic N. Halstrom, BBO # 218420
Ingrid A. Halstrom, BBO # 694272
Halstrom Law Offices, PC
P.O. Box 121203 Lafayette Station
Boston, MA  02112-1203
(617) 262-1060
office@halstrom.com
ingrid.halstrom@halstrom.com